# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 98
The People &c.,
   Respondent,
  v.
Daniel Talluto,
   Appellant.

Bradley E. Keem, for appellant.
Gregory S. Oakes, for respondent.
The Legal Aid Society et al., amici curiae.

TROUTMAN, J.:

   The Sex Offender Registration Act ([SORA] Correction Law § 168 *et seq.*) provides

for two circumstances in which a person convicted of an offense in another jurisdiction

must register as a sex offender. One circumstance is if the offense satisfies an "essential

elements" test—i.e., the offense "includes all of the essential elements" of an enumerated "sex offense" or "sexually violent offense" (§ 168-a [2] [d] [i]; [3] [b]). The other is if the offense falls within SORA's foreign registration requirements—i.e., "a felony in any other jurisdiction for which the offender is required to register as a sex offender" therein (§ 168-a [2] [d] [ii]; [3] [b]).[1] The issue here is whether section 168-a (3) (b) requires any person subject to SORA's foreign registration requirements to be designated a sexually violent offender regardless of whether the underlying offense is violent in nature (*see* § 168-a [7] [b]). We hold that it does.

I

In 2012, defendant was convicted in Michigan of criminal sexual conduct in the first degree, a felony that required him to register as a sex offender under Michigan's "Sex Offenders Registration Act" (*see* Mich Comp Laws §§ 28.722 [v] [iv]; 750.520b [1] [b] [ii] ["A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . (t)hat other person is at least 13 but less than 16 years of age and . . . (t)he actor is related to the victim by blood or affinity to the fourth degree"]).

In 2020, defendant relocated to New York to live near family. The Board of Examiners of Sex Offenders (Board), pursuant to Correction Law § 168-k, determined that he was required to register as a sex offender due to his "felony conviction which requires

---

[1]    A third circumstance—not relevant here—is if the offender is convicted of a federal crime enumerated under Correction Law § 168-a (2) (d) (iii).

registration as a sex offender in Michigan." The Board completed a Risk Assessment Instrument, allocating 65 points to defendant, making him a presumptive level one risk. The Board recommended that County Court adjudicate him as such with no sexually violent offender designation. Defendant and the People agreed with the recommendation. However, the court concluded that the plain language of Correction Law § 168-a (3) (b) required it to designate defendant a sexually violent offender because he was convicted in Michigan of a felony that required him to register as a sex offender in that state. Although the court believed the result illogical, it concluded that any error or perceived injustice in the statute was a matter for the legislature.

The Appellate Division affirmed, with two Justices dissenting (201 AD3d 1333). The majority concluded that subdivision (3) (b) plainly and unambiguously required County Court to designate defendant a sexually violent offender, although it added that the result was "illogical and unfair" and that there was a "compelling case" that subdivision (3) (b)'s foreign registration clause was the result of a legislative drafting error (*id.* at 1334). The dissenting Justices concluded that applying the foreign registration clause would lead to "an unreasonable if not absurd result, i.e., the designation of defendant as a sexually violent offender" when the underlying felony was a nonviolent offense (*id.* at 1336-1337).

Defendant appeals as of right by virtue of the two-Justice dissent (*see* CPLR 5601 [a]).

II

Defendant contends that the insertion of subdivision (3) (b)'s foreign registration clause was a legislative drafting error, and that the legislature did not intend for nonviolent

offenders to be designated as sexually violent, a result he considers absurd. We reject that contention. Defendant's proposed construction of subdivision (3) (b) amounts to a request that we read the foreign registration clause out of the statute entirely and fail to give effect to that portion of the statute.

We note at the outset that, although the amicus brief sets forth an argument that the statute is unconstitutional, defendant did not preserve any challenge to the constitutionality of subdivision (3) (b)'s foreign registration clause, nor does he raise any such challenge on appeal (*cf.* 201 AD3d at 1334). The sole issue before us is one of pure statutory interpretation and, therefore, our task " 'is to ascertain the legislative intent and construe the pertinent statutes to effectuate that intent' " (*People v Roberts*, 31 NY3d 406, 418 [2018]).

"We begin with the statutory text, which is the clearest indicator of legislative purpose" (*Matter of M.B.*, 6 NY3d 437, 447 [2006]; *see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). "[E]ffect and meaning must, if possible, be given to the entire statute and every part and word thereof" (McKinney's Cons Laws of NY, Book 1, Statutes § 98). "Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning; words are not to be rejected as superfluous" (*Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86, 91 [2001]; *see Matter of Anonymous v Molik*, 32 NY3d 30, 37 [2018]).

"Any sex offender" must register as such pursuant to SORA's requirements (Correction Law § 168-f [1]). " 'Sex offender' " is defined as "any person who is convicted of any of the offenses set forth in subdivision two or three" of section 168-a (§ 168-a [1]).

Subdivision two sets forth a list of criminal offenses in paragraphs (a) through (c) that constitute "sex offenses." Subdivision three sets forth a separate list of criminal offenses in paragraph (a) that constitute "sexually violent offenses." Only those persons convicted under subdivision three of a "sexually violent offense" warrant the designation of "sexually violent offender" (§ 168-a [7] [b]). Subdivisions (2) (d) and (3) (b) encompass out-of-jurisdictions convictions:

> " 'Sex offense' means . . . a conviction of (i) an offense in any other jurisdiction which includes all of the essential elements of any such crime provided for in paragraph (a), (b) or (c) of this subdivision or (ii) a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred or, (iii) [enumerated federal crimes]" (§ 168-a [2] [d]).

> " 'Sexually violent offense' means . . . a conviction of an offense in any other jurisdiction which includes all of the essential elements of any such felony provided for in paragraph (a) of this subdivision or conviction of a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction in which the conviction occurred" (§ 168-a [3] [b]).

The statutory language is clear and unambiguous: "a felony in any other jurisdiction for which the offender is required to register as a sex offender" therein is, under subdivision (3), a "sexually violent offense" (*id.*). "As a general rule, unambiguous language of a statute is alone determinative" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000]). However, where the plain meaning of a statutory provision leads to " 'absurd or futile results,' " this Court will look " 'beyond the words to the purpose of the act' " (*New York State Bankers Assn. v Albright*, 38 NY2d 430, 436 [1975]).

The history of the statute reinforces the clear meaning of the text. The legislature enacted SORA in 1995 in response to an act of Congress that conditioned federal funding on states establishing sex offender registries (*see* L 1995, ch 192; *People v Diaz*, 32 NY3d 538, 540 [2018]). SORA, in its original form, encompassed out-of-jurisdiction convictions of only those offenses that satisfied the essential elements test for a "sex offense" or a "sexually violent offense." There was no foreign registration clause (*see* L 1995, ch 192, § 2).

In 1997, however, Congress added a reciprocity requirement, directing states to require sex offender registration of residents convicted of offenses in other states that fit within the federal scheme (*see Diaz*, 32 NY3d at 541). In 1999, the legislature responded by amending the definitions of "sex offense" and "sexually violent offense" to add the foreign registration clauses (*see* L 1999, ch 453, §§ 1-2). The Governor's Program Bill Memorandum makes it clear that the language was added because the essential elements test was deemed to be noncompliant with the recent Congressional directive (*see* L 1999, ch 453, Governor's Program Bill Mem No. 116 at 6 ["failure to expand the list of registerable crimes as required by (f)ederal law could result in the loss of 10% of the State's Byrne Formula grant"]).[2] The memorandum explained that the then-existing statute

> "require[d] a detailed analysis of the statutes in other
> jurisdictions to determine whether registration is required in
> New York State. The bill sets forth a clear method to

---

[2]    The legislative history also includes a Senate Introducer's Memorandum in Support, the language of which is identical to the language in the Governor's Program Bill Memorandum (*see* L 1999, ch 453, Senate Introducer Mem in Support, *available at* http://public.leginfo.state.ny.us/navigate.cgi [accessed Dec. 8, 2022]).

> determine whether registration in New York State is required:
> if registration is required in the jurisdiction of conviction,
> registration will be required in New York" (*id.* at 5).

The memorandum also contained a summary of each section of the bill, which specifically

addressed the amendment to subdivision (3) (b):

> "Section 1 . . . amends paragraph b of subdivision 2 to include
> within the definition of sex offense a conviction in another
> jurisdiction of a felony which requires the person to register as
> a sex offender in the jurisdiction where the conviction occurred
> . . .

> "Section 2 . . . amends paragraph b of subdivision 3 of section
> 168-a of the Correction Law in the same manner as the
> amendment to section 168-a (2) (b) with respect to a conviction
> for a sexually violent offense in another jurisdiction" (*id.* at 1).

The identical language in the definitions of "sex offense" and "sexually violent

offense" with respect to a felony in another jurisdiction raises certain issues.  The

definitions do not otherwise overlap (*compare* § 168-a [2] [a]-[c], *with* § 168-a [3] [a]).

Nor should they.  A person convicted of a "sexually violent offense" is a "sex offender"

subject to all the same restrictions and requirements as a person convicted of a mere "sex

offense" (*see* § 168-a [1]; *see also* § 168-a [7] [b]), as well as additional ones, such as

lifetime registration regardless of risk level (*see* § 168-h).  Practically everyone involved

in this case from its inception—defendant, the People, the County Court Judge, all five

Justices at the Appellate Division, including the Justices in the majority and the dissent,

and apparently the Board of Examiners of Sex Offenders—agree that the statute is

problematic as applied to defendant.

The Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York (Committee) has concluded that subdivision (3) (b)'s foreign registration clause was added in error and, accordingly, has recommended every year since 2010 that the legislature delete it.[3]  The Committee has observed that, because subdivision (3) (b)'s foreign registration clause is identical to its (2) (d) counterpart, the statute "collapses the distinction between violent and non-violent sex offenses, at least as it applies to out-of-state offenders who reside in New York" (Report of the Advisory Committee on Criminal Law and Procedure to the Chief Administrative Judge of the Courts of the State of New York, Jan. 2010 at 17, *available at* https://www.nycourts.gov/LegacyPDFS/IP/judiciaryslegislative/pdfs/2010-CriminalLaw&Procedure-ADV-Report.pdf [accessed Dec. 8, 2022]).

Indeed, the governor's and Senate introducer's explanations for the addition of the clause—as relating to "a conviction for a sexually violent offense in another jurisdiction"—suggests that the legislature may have intended for subdivision (3) (b)'s foreign registration clause to have a more limited effect than its plain language compels.  As the amici suggest, the legislature may have meant for subdivision (3) (b)'s foreign registration clause to apply

---

[3]      Since the Committee made its recommendation 13 years ago, the legislature has not acted.  At the same time, the Board has rarely—if ever—recommended that an adjudicating court designate an out-of-jurisdiction offender a sexually violent offender solely by application of subdivision (3) (b)'s foreign registration clause, instead recommending that court adjudicate such offenders under subdivision (2) (d)'s foreign registration clause (*see e.g. Diaz*, 32 NY3d 538 [2018]; *Matter of Kasckarow v Board of Examiners of Sex Offenders of State of N.Y.*, 25 NY3d 1039 [2015]; *Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745 [2007]; *People v Kennedy*, 7 NY3d 87 [2006]).

only to an offender who is required to register as a *sexually violent* offender in the jurisdiction in which the conviction occurred. Yet, as the amici acknowledge, this construction is itself problematic because, unlike SORA, the registration laws of certain states do not include a category of offense designated "sexually violent offenses." In fact, the term "sexually violent offense" does not appear in Michigan's sex offender registration law (*see* Mich Comp Laws § 28.721 *et seq.*).[4] Moreover, if "the wording of the statute has created an 'unintended consequence,' . . . it is the prerogative of the legislature, not this Court, to correct it" (*Matter of Lisa T. v King E.T.*, 30 NY3d 548, 556 [2017]). Although select ambiguous language in the legislative history provides some support of defendant's argument, the plain language of the statute is *not* ambiguous, and thus we are bound to follow it (*see Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y.*, 86 NY2d 198, 204 [1995]).

Defendant—and the many learned judges, lawyers, and legal scholars—may well be correct that subdivision (3) (b)'s foreign jurisdiction clause contains a legislative drafting error, but that does not give the courts license to ignore it. Courts must not "legislate under the guise of interpretation" (*People v Finnegan*, 85 NY2d 53, 58 [1995]). If we were to take it upon ourselves to delete subdivision (3) (b)'s foreign registration

---

[4]     New York is among a small minority of states that place all out-of-jurisdiction sex offenders into a category normally reserved for the most serious offenders who commit their crimes in state. In Illinois, every person who is required to register as a sex offender in another state must register as a "sexual predator" (730 Ill Comp Stat 150/2 [E-10]), a designation that requires lifetime registration (*see* 730 Ill Comp Stat 150/7; *see also* Wash Rev Code § 9A.44.140 [4] [requiring all out-of-jurisdiction sex offenders residing in the State of Washington to register indefinitely]).

clause as the Committee suggested the legislature should do, we would be impinging on the province of the legislature (*see People v Gottlieb*, 36 NY2d 629, 632 [1975]).  Thus, we are constrained to construe subdivision (3) (b)'s foreign registration clause according to its plain language.  If the legislature did err, we unequivocally call upon it to remedy that error.

III

Contrary to defendant's alternative contention, adopted by our dissenting colleague, the decision whether to designate a defendant a sexually violent offender is not a matter with respect to which the adjudicating court may exercise discretion.  "Sexually violent offender" is defined as "a sex offender who has been convicted of a sexually violent offense defined in subdivision three" (Correction Law § 168-a [7] [b]).  The court is bound by the statute (*see People v Bullock*, 125 AD3d 1, 7 [1st Dept 2014], *lv denied* 24 NY3d 915 [2015]; *People v Lockwood*, 308 AD2d 640, 640-641 [3d Dept 2003]).

To be sure, an adjudicating court in a SORA proceeding has the discretion to grant a party's request for an upward or downward departure from the presumptive risk level. That authority, and the procedures for assessing the defendant's presumptive risk level in the first instance, are derived from SORA's Guidelines (*see People v Johnson*, 11 NY3d 416, 421 [2008], citing Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [2006]; *see also People v Gillotti*, 23 NY3d 841, 853 [2014])—which the Board is empowered by to create pursuant to Correction Law § 168-l (5).  Conversely, section 168-l (6) does not explicitly or implicitly bestow discretion on the courts to "depart" from a sexually violent offender designation.

That section sets forth only "the procedure for SORA adjudications, describing how after the Board indicates whether a defendant is a sexually violent offender, a court conducts a hearing in which it reviews the Board's recommendations and officially pronounces the defendant's designation" (*Bullock*, 125 AD3d at 7); it does not provide the courts with the discretion to disregard the legislature's unambiguous statutory definition of "sexually violent offender."

IV

County Court properly determined that it was required by law to designate defendant a sexually violent offender because he was convicted of a felony in another jurisdiction that required him to register as a sex offender therein (*see* Correction Law § 168-a [3] [b]; [7] [b]).

Accordingly, the order of the Appellate Division should be affirmed, without costs.

WILSON, J. (dissenting):

I fully agree with the majority that under the circumstances of this case, it is not within our purview to rewrite the challenged portion of the Correction Law.

Mr. Talluto has raised a second argument on appeal: that Correction Law § 168-n uses identical language in vesting a SORA court with the discretion to make a

- 1 -

"determination that an offender is a . . . sexually violent offender" as it does to vest the court with the discretion to make "a determination with respect to the level of notification." Thus, by using the exact same terms for both types of determinations and requiring that each be done by "applying the guidelines established in subdivision five of section one hundred sixty-eight-l of this article" (Correction Law § 168-n [1], [2]), Mr. Talluto contends that the legislature has authorized courts to exercise their discretion not just to alter a risk level determination upwards or downwards, but also to exercise their discretion when determining whether someone is a sexually violent offender. For the reasons persuasively set forth in the dissenting opinion of Justice Dianne T. Renwick in *People v Bullock* (125 AD3d 1 [2014] [Renwick, J., dissenting]), I agree with Mr. Talluto's construction of section 168-n, and would remit for the lower courts to exercise their discretion in that regard. I observe also that, were there a potentially successful challenge to the constitutionality of section 168-n, adopting Justice Renwick's construction might save the statute.

Order affirmed, without costs. Opinion by Judge Troutman. Acting Chief Judge Cannataro and Judges Rivera, Garcia and Singas concur. Judge Wilson dissents in an opinion.

Decided December 13, 2022